IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLA DEAN "DEANIE" PARKER and ROSE BANKS, individually and as successor-in-interest to HOMER BANKS,<br><br>  Plaintiffs,<br><br>v.<br><br>SARAH HINTON in her capacity as executor of the Estate of Spencer Davis,<br><br>  Defendant. | Case No. 3:19-cv-00214<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE HOLMES |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 62). Plaintiff filed a response (Doc. No. 69), Defendant filed a reply (Doc. No. 70), and Plaintiff filed a notice of supplemental authority (Doc. No. 72).

For the reasons stated below, Defendant's Motion will be **GRANTED**.

### I. PROCEDURAL HISTORY

The background and procedural history of this case is more fully recounted in the Court's July 6, 2020 Memorandum (Doc. No. 45). For ease of reference the relevant facts are repeated here.

Plaintiffs Willa Dean "Deanie" Parker and Rose Banks filed this action for copyright infringement alleging the song "Gimme Some Lovin," co-authored by Spencer Davis, incorporates

1

the "riff" (a distinct note pattern) from Plaintiffs' protected work "Ain't That A Lot of Loving." (Compl., Doc. No. 1 at ¶¶ 21, 27, 31-38).

Claims arising from the same alleged copyright infringement were previously litigated in *Parker, et al. v. Winwood, et al.*, No. 3-16-cv-00684, 2017 WL 6886076 (M.D. Tenn. Oct. 17, 2017), aff'd 938 F.3d 833 (6th Cir. 2019) ("*Parker I*"). In *Parker I*, Plaintiffs sued The Spencer Davis Group, Spencer Davis, Mervyn Winwood, Steve Winwood, Kobalt Music Publishing, and Universal-Songs of Polygram International, Inc. ("Universal"). On October 17, 2017, the District Court granted summary judgment in favor Steve Winwood and Kobalt Music Publishing and dismissed the copyright infringement claims against them. *Parker I*, 2017 WL 6886076. The same order dismissed Mervyn Winwood for lack of personal jurisdiction and the claim of direct infringement against Universal. *Id*. Thereafter, Plaintiffs voluntarily dismissed Spencer Davis, who had never been served, The Spencer Davis Group, and the remaining claims against Universal. Order Dismissing Claims, *Parker I*, (Mar. 8, 2018) (Doc. No. 116). The Sixth Circuit affirmed the decision of the district court. *Parker v. Winwood*, 938 F.3d 833 (6th Cir. 2019).

On substantially the same facts as alleged in *Parker I*, Plaintiffs initiated a new action for copyright infringement against Spencer Davis on March 8, 2019. (Doc. No. 1). During the course of this litigation, Spencer Davis passed away and Sarah Hinton, executor of his estate, was substituted as Defendant. (Doc. No. 59).

Now before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 62). Defendant argues that, under the Copyright Act of 1909,[1] Plaintiffs do not have standing to sue to enforce the copyright because it was assigned to a third party. Defendant further argues that the failure to submit deposit copies of the work to the Copyright Office as required by the Copyright Act of 1909, invalidated the copyright and is a bar to suits for copyright enforcement.

## II. FACTUAL BACKGROUND

In 1965, Willa Dean "Deanie" Parker and Homer Banks co-authored the song, "Ain't That a Lot of Love." (Doc. No. 71, ¶ 1). They registered the song as an unpublished work with the United States Copyright Office on April 28, 1966, and renewed the copyright registration on January 3, 1994. (Doc. No. 68, ¶ 3; Doc. No. 71, ¶ 10; Doc. No. 1-1; Doc. No. 1-2). There is no evidence that Plaintiffs, or anyone else, filed deposit copies of the work with the Copyright Office. (Doc. No. 68, ¶ 4).

In consideration for certain royalties, Parker and Banks assigned the copyright to "Ain't That A Lot of Love" to a third party.[2] (Doc. No. 68, ¶ 1; Doc. No. 71, ¶¶ 3-5). Over the years, the sheet music of the composition has been published, and the song has been recorded by a number

---

[1] Copyright Act of 1909 (as amended and codified), Act of March 4, 1909, 35 Stat. 1075 (hereinafter "Copyright Act of 1909" or "1909 Act").

[2] There were two assignment agreements. The first assignment, dated March 12, 1966, assigned the rights in "Ain't That A Lot of Love" to East Publications, Inc. (Doc. No. 63-1). On October 4, 1968, Parker and Banks entered into a second agreement with East/Memphis Music Corp., successor in interest to East Publications. (Doc. No. 71 ¶ 4).

3

of artists, including by Homer Banks himself.[3]  The rights to the song have been transferred several times and are currently held by Rondor Music International, Inc., a wholly owned subsidiary of Universal Music Group Holdings, Inc. ("Universal").  Universal also holds rights in the alleged infringing work, "Gimme Some Lovin."

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003).  The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been

---

[3]  *See e.g.,* Doc. No. 70-1 (Homer Banks, *Ain't That A Lot Of Love*, on Hooked By Love: The Best Of Homer Banks (EMI Records 2005)); Doc. No. 70-2 (Song Details for "A Lot of Love," Universal Music Publishing Group).

presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

## IV. ANALYSIS

### A. Standing

Defendant argues Plaintiffs do not have standing to sue for copyright infringement because Ms. Parker and Mr. Banks assigned the rights and interests in the work to a third party.[4] (Doc. No. 63 at 5). Whether Plaintiffs have standing to sue turns on whether the Copyright Act of 1909 or the Copyright Act of 1976[5] applies their infringement claims. The *Parker I* court previously considered this question and found that the 1976 Act applies and that Plaintiffs, as beneficial owners of the copyright, have standing to sue. *Parker I*, 2017 WL 6886076, at *7-8. The Court agrees with the conclusion reached in *Parker I*.

---

[4] In a footnote, Defendant also argues Ms. Banks does not have standing because Homer Banks signed a document acknowledging that the song at issue was a "work for hire," vesting copyright in his publisher as a matter of law. (*Id*. at 5, n.2). The cited document (Doc. No. 63-2) is dated October 4, 1968, the same day Parker and Banks assigned rights in the song to East/Memphis Music Corp., successor-in-interest to East Publications (Doc. No. 71 ¶ 4). The document states that Homer Banks composed the original song "Ain't That a Lot of Love" as an employee of East/Memphis Music. (Doc. No. 63-2). The document also provides that Homer Banks is entitled to the copyright in the song. (*Id*.). The plain language of the document indicates that the rights to "Ain't That a Lot of Love" were reserved to Homer Banks and did not vest in his employer. At a minimum, there are questions of fact regarding his reservation of copyright such that dismissal for lack of standing at this juncture would be inappropriate.

[5] The Copyright Act of 1976, Pub. L. No. 94-553, 90 Stat. 2541, enacted October 19, 1976, was comprehensive revision of the copyright law. It provides the framework for current copyright law. *See* 17 U.S.C. §§ 101 *et seq*. (as amended).

5

Concerning Plaintiffs' standing to sue, the *Parker I* Court summarized the applicable law as follows:

> Under § 501(b) of the 1976 Copyright Act, which "merely codified the case law that had developed under the 1909 Act with respect to the beneficial owner's standing to sue[,] ... '[t]he legal or beneficial owner of an exclusive right under a copyright' is entitled to sue for infringement." *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) (quoting 17 U.S.C.A. § 501(b)). "A 'beneficial owner' for this purpose would include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." *Id*. (citing the legislative records of the Act and quoting H.R. Rep. No. 1476, 94th Cong., 2d Sess. 159, reprinted in 1976 U.S. Code Cong. & Ad. News 5659, 5775 (internal quotations omitted)); accord *Warner/Chappell Music, Inc. v. Blue Moon Ventures*, No. 3:10–1160, 2011 WL 662691, at *3 (M.D. Tenn. Feb. 14, 2011). "To the extent that a beneficial owner's standing to sue differs between the 1909 Act and the [1967] Act, the latter applies to causes of action arising after January 1, 1978, even if the instrument creating such beneficial interest was executed pre–1978." 1 Nimmer on Copyright § 12.02[C] at n.35. Accordingly, for alleged infringement after the effective date of the 1976 Act, there is no requirement that a beneficial owner join the legal owner; whereas for alleged infringement prior to 1978, a beneficial owner is required to join the legal owner in a suit. *See Walker v. Univ. Books, Inc*., 602 F.2d 859, 862 (9th Cir. 1979).

*Parker I*, 2017 WL 6886076, at *7-8.

There is no dispute that, although Plaintiffs assigned all rights in the song to a third party, they retained the right to royalties based on sales and license fees. (*See* Doc. No. 71, ¶¶ 3-5). The Court finds Plaintiffs are, therefore, beneficial owners of the song at issue and have standing to bring an infringement claim under the Copyright Act of 1976.

## B. Copyright Registration and Deposit Requirements

Defendant argues Plaintiffs have not met the prerequisites to a copyright infringement claim because a copy of the work was never deposited with the Copyright Office. Defendant contends that the failure to file a deposit copy of "Ain't That a Lot of Love" with the Copyright

6

Office invalidates Plaintiffs' infringement claim and serves as a bar to an infringement enforcement action.

The parties agree that the Copyright Act of 1909 (the "1909 Act") applies to "publication and registration issues" as to "Ain't That A Lot of Love," which was created and registered as an unpublished work prior to the effective date of the 1976 Copyright Act. (Pl. Resp. Br., Doc. No. 69 at 8; Def. Br., Doc. No. 63 at 6-9).

The 1909 Act provided statutory copyright protection for published and unpublished works.[6] Statutory copyright protection for unpublished works could be claimed under the 1909 Act only by registration and deposit pursuant to Section 12. *See* 1 Nimmer on Copyright § 7.16[A][2][c][ii]. Registration of an unpublished work required an application, fee, and deposit of copies of the work.[7] Copyright Act of 1909 § 11; *see also*, Application for Registration of a Claim to Copyright, Doc. No. 1-1 (directing applicants to mail the application form, one complete copy of the work, and the registration fee of $6 to the Register of Copyrights).

---

[6] Under the 1909 Act, registration of unpublished works was not mandatory and unregistered, unpublished works remained protected by common law. Nimmer on Copyright § 7.16[A][2][a].

[7] Section 11 of the 1909 Act provided that a claimant "may obtain registration of his claim to copyright by complying with the provisions of this title, including the deposit of copies, and upon such compliance the Register of Copyrights shall issue to him the certificates provided for in section 209 of this title." Copyright Act of 1909 (as amended) Act of March 4, 1909, Ch. 320, 35 Stat. 1075, § 11. Section 209 states that the certificate will "contain the name and address of said claimant, … the name of the author (when the records of the copyright office shall show the same), the title of the work which is registered for which copyright is claimed, the date of the deposit of the copies of such work, the date of publication if the work has been reproduced in copies for sale, or publicly distributed, and such marks as to class designation and entry number as shall fully identify the entry." *Id*. § 209. The statute provides that the certification is prima facie evidence of the facts stated therein. *Id*. In addition, it directs "the register of copyrights [to] furnish, upon request, without additional fee, a receipt for the copies of the work deposited to complete the registration." *Id*.

Copyright for published works was secured at the time of publication by publication with a "notice of copyright" affixed to the work. Copyright Act of 1909 § 10, 13. Although publication with notice of copyright was all that was required to secure statutory copyright in a published work, a claimant could register the copyright and receive a certificate of registration from the Copyright Office. *Id*. §§ 11, 209. Like registration for unpublished works, registration for published works required an application, fee, and deposit copies of the work. *Id*., *see also*, Application for Registration of a Claim to Copyright, Doc. No. 1-1 (directing applicants for registration of published works to mail the application form, two complete copies of the "best edition of the work," and registration fee of $6 to the Register of Copyrights).

Whether or not the copyright was registered, the 1909 Act required that "after copyright has been secured by publication of the work with the notice of copyright as provided in section 10 of this title, there shall promptly be deposited in the Copyright Officer or in the mail addressed to the Register of Copyrights, Washington, District of Columbia, two complete copies of the best edition thereof then published." *Id*. § 13. If the work was "not reproduced in copies for sale" (i.e., unpublished), a single copy of the work must accompany the claim for copyright. *Id*.

Failure to promptly deposit copies of the work after publication did not automatically void the copyright. Instead, the 1909 provided that "the Register of Copyright may, at any time after publication of the work, upon actual notice, require the proprietor of the copyright to deposition them." *Id*. § 14. Failure to make the required deposit within three months of the demand (six months for outlying territorial possessions of the United States) resulted in the copyright becoming void. *Id*.

Focusing on the promptness of the deposit, courts have found that "mere delay" in filing deposit copies does not invalidate copyright. *See Washington Pub. Co. v. Pearson*, 306 U.S. 30, 40-42 (1939) (delay of three months does not invalidate copyright, but "no action can be maintained before copies are actually deposited); *King Records v. Daily*, No. 3:00-cv-0300, 2003 U.S. Dist. LEXIS 27285, at * 27 (M.D. Tenn. 2003) (holding that a delay of 20 years in depositing copies of the songs as published works "goes far beyond mere delay" and results in a forfeiture of copyright)).

Notwithstanding uncertainties regarding what constitutes a "prompt deposit," even if a copyright is otherwise valid, under the 1909 Act, the holder of a copyright cannot enforce the copyright through an infringement action until the copyright is registered and deposit copies are filed. Copyright Act of 1909 § 13. Section 13 specifically provides, "No action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this title with respect to the deposit of copies and registration of such work have been complied with." *Id*. Accordingly, although failure to deposit copies of the work did not necessarily void the copyright of a work published with notice of copyright, registration and deposit are prerequisites to bringing an infringement claim. *Id*. § 13. A copyright holder who had not complied with the registration and deposit requirements could, therefore, find himself with a valid copyright and yet be unable to enforce the copyright through an infringement action.

The Copyright Act of 1976 changed various aspects of federal copyright law, but registration and deposit are still prerequisites for a copyright infringement suit. *See* 17 U.S.C. § 411 ("no civil action for infringement of the copyright of any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this

9

Case 3:19-cv-00214    Document 79    Filed 03/08/22    Page 9 of 13 PageID #: 531

title."). Subject to limited exceptions that do not appear applicable here, "registration is a condition precedent for an infringement action to move forward in federal court." Nimmer on Copyright § 7.16[B][1][a] (noting that the 1909 Act contained comparable language). As under the 1909 Act, registration requires an application, fee, and deposit copies of the work. 17 U.S.C. § 408; *see also*, Nimmer on Copyright § 7.17[A] (citing 17 U.S.C. § 408(b)) ("Registration necessarily requires an accompanying deposit."). Also, as before, registration and deposit are not a prerequisite for valid copyright, but are a prerequisite for suit.

Plaintiffs concede that there is no evidence copies of "Ain't That a Lot of Love" were ever deposited with the Copyright Office,[8] but argue that the copyright is valid notwithstanding noncompliance with this requirement and that failure to file deposit copies does not bar their suit for copyright infringement.

First, Plaintiffs argue that deposit copies were only required upon publication and not for unpublished works. This argument is not well taken. As an initial matter, the plain language of the statute which requires deposit copies for both published and unpublished works. Copyright Act of 1909 §§ 12, 13. Moreover, despite Plaintiffs' assertions to the contrary, there is no genuine dispute that "Ain't That a Lot of Lovin'" has been published. (*See* Doc. No. 70-1 through 70-8). Although distribution of phonorecords before January 1, 1978, does not constitute publication of a musical work, *see* 17 U.S.C. § 303(b), here the record indicates that the work was recorded for distribution both before and after January 1, 1978.

---

[8] Doc. No. 68, ¶¶ 3-4 (citing Plaintiffs' Response to Request for Production ("Produce documents evidencing that Plaintiffs (or any other party) submitted deposit copies with respect to 'Ain't That a Lot of Loving' … RESPONSE: … no such documents exist.")).

10

Plaintiffs also argue that the failure to promptly deposit copies of the work upon publication does not invalidate the copyright. (Doc. No. 69 at 8-9). While it may be the case that "mere delay" in depositing copies of a published work does not invalidate the copyright, here, Plaintiff concedes there is no evidence that copies were ever deposited. This presents obstacles to both the validity of copyright and the availability of an enforcement action.

As explained by the *Parker I* court, "The general rule under the 1909 Act was that the publication of a work with proper notice was necessary to obtain statutory copyright protection. Deposit of a copy of the published work with the Copyright Office was not necessary to obtain statutory protection. Nor did the failure to promptly deposit copies upon publication foreclose a right to sue for infringement." *Parker I*, 2017 WL 6886076, at *5. The Court further explained that although the failure to deposit copies *promptly* after publication did not bar an infringement action, "no copyright infringement action could be brought before the deposit was made and the work was registered." *Id*. The Court continued, "[e]ven if the work at issue had been published, however, Plaintiffs would not be foreclosed from bringing an infringement suit so long as they made the requisite deposit." *Id*. at *6.

Here, the evidence indicates that the requisite deposit has not been made. Because there is no evidence that Plaintiffs or anyone else submitted deposit copies of "Ain't That a Lot of Lovin'" as either a published or unpublished work the infringement suit is barred.

Plaintiffs' argument that the registration certificate entitles them to a presumption of copyright protection, including the right to institute the infringement action, is unpersuasive. (Doc. No. 69 at 10 (citing *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 3:17-cv-42, 2019 WL 4647305 (S.D. Ohio Sept. 24, 2019)). Plaintiffs' argument again conflates the validity
11

of copyright with the prerequisites to suit. As discussed above, a copyright holder may have a valid copyright and yet be unable to enforce that copyright in federal court if the prerequisites to suit – here registration and deposit – have not been met.

In addition, under the 1909 Act, the Certificate of Copyright Registration is prima facie evidence only of the facts contained therein.[9] Copyright Act of 1909 § 209. Plaintiffs do not argue that the Court should infer from the certificate of registration that the deposit copy was filed. Moreover, the same provision of the 1909 Act provided a mechanism for obtaining evidence of deposit copies: "In addition to such certificate, the register of copyrights shall furnish, upon request, without additional fee, a receipt for the copies of the work deposited to complete the registration." 1909 Act § 209. This suggests that the certificate of registration is not, itself, evidence that copies of the work were deposited.

---

[9] The Registration Certificate has a space for "Title," with the instruction to "Give the title of the musical composition as it appears on the copies." (Doc. No. 1-1). The "Title" line is completed "AIN'T THAT A LOT OF LOVE" followed by an asterisk. The asterisk appears to be connected to a phrase in a box at the end of the Application titled "FOR COPYRIGHT OFFICE USE ONLY" which states, "* Title on copy: 'Lot of Love'," followed by the abbreviation "Cert." in parentheses. (Doc. No. 1-1).

## V. CONCLUSION

For the reasons stated Plaintiffs' suit for copyright infringement of the work "Ain't That a Lot of Lovin'" is barred for failure to deposit copies of the work (published or unpublished). Accordingly, Defendant's Motion for Summary Judgment (Doc. No. 62) will be **GRANTED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE